140 So.2d 916 (1962)
Malcolm J. TULLIER
v.
Marie Elaine BROUSSARD, Wife of Malcolm J. TULLIER.
No. 355.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
*917 Zelden & Zelden, Sam Monk Zelden, New Orleans, for defendant and appellant.
Harold L. Molaison, Gretna, for plaintiff and appellee.
Before McBRIDE, REGAN and YARRUT, JJ.
McBRIDE, Judge.
Mrs. Marie Elaine Twilbeck, divorced wife of Malcolm Tullier, has appealed from a judgment dismissing her rule against her former husband for the permanent care and custody of their minor children, Sandra Tullier, Raymond Tullier and Dixie Tullier, aged respectively at present 11, 9 and 4 years. When the parties were married in 1949, the wife was 14 years old and Malcolm Tullier was 21; they established the matrimonial domicile in Jefferson Parish, and the three children above-named were born of their union.
In January 1958, Tullier filed suit for a divorce on the ground of the wife's adultery, and, subsequently in said proceedings, on a rule brought by him, he was awarded "temporary care, custody and control of the minor children" by an order of court dated February 26, 1958. The evidence showed that the mother had taken the children to Mississippi; however, she returned to New Orleans and relinquished them to their father telling him "he could take care of them until the court decided what was to be done." Her delivery of the children to their father seems to have been precipitated by his having her arrested in Hattiesburg on a charge of "criminal neglect." On the trial of the rule it was made to appear that the wife still resided in Hattiesburg, and she declared from the witness stand that her intention was to continue to reside there. This prompted the rendition of the order granting the temporary custody of the children to their father. We notice from the transcript of the testimony that at the instance of the judge it was explained to Mrs. Tullier that the order "has to do only with the pendency of the suit and not the permanent care, custody and control."
The wife subsequently, but unsuccessfully, filed two rules for custody of the children, the first of which was dismissed after a hearing, the other being dismissed on the ground that the proceedings were moot in view of a second suit for divorce which was then pending between the parties.
The record indicates the mother has entertained a constant desire to have her children and that she exercised her rights of visitation at all times.
Tullier never took any steps to prosecute his suit for divorce on the ground of adultery, and there is nothing whatever in the record going to show that the defendant, then Mrs. Tullier, had been guilty of adultery, was not of good moral character, or that she was unfit to have the custody of her children. The mother admitted that on the occasion of her taking the children to Mississippi she left the state with a man and counsel argues this is sufficient to show that the mother is morally unfit to have the children. The man in question did leave at the same time, but he traveled in his own automobile and the mother and children *918 rode in another. During their short stay in Mississippi the mother and children lived in the home of the brother and sister-in-law of the man, she and the children sleeping on a couch; the man slept in a rear bedroom. No immoral conduct on the part of the mother has been shown. It was also brought out upon the trial of the last rule for custody that the mother had been arrested in New Orleans in connection with an automobile theft, but the evidence touching this point is so meagre and general that it can be given no probative effect.
In October 1959, Tullier filed a second suit for divorce on the ground of living separate and apart from his wife for the statutory period of two years. Defendant answered admitting the separation; however, she alleged that she desired the permanent care, custody and control of the three minor children, but that whereas she was living in an apartment with a young lady, the facilities there for rearing three minor children were inadequate and that she was willing to allow the father to have custody temporarily, and she reserved her full rights to claim their permanent custody, care and control at some future time. In due course a judgment of divorce was entered in which the father was granted the temporary custody, care and control of the children. The judgment specifically provides:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that full rights are hereby reserved by the defendant, Marie Elaine Broussard, wife of Malcolm J. Tullier to file for permanent custody, care and control of all the minor children herein."
In September 1960, the defendant (who had now become Mrs. Raymond Twilbeck) filed a rule seeking custody of the children which she averred she is legally entitled to have; that she has remarried since her divorce; that her new husband is gainfully employed and provides a good home for her and is willing to provide a suitable home for her three children. In January 1961 her rule was dismissed and a judgment was rendered "continuing custody of the children in the father." Hence this appeal.
We believe that some of the observations made by the trial judge in his reasons for judgment are extremely pertinent and we quote them thus:
"The facts as they now stand are that both parties have remarried and live in their own homes. There is a striking similarity in occupations, both Mr. Tullier and his wife working for Continental Can Company, and Mr. Twilbeck working for American Can Company, all at roughly the same salary. Mrs. Twilbeck used to work for Continental Can Company, but since her remarriage she no longer works, but keeps house. There is no evidence of the present moral unfitness either of Mrs. Twilbeck or Mr. Tullier. Their respective domiciles are located a considerable distance apart, but in comparable neighborhoods. The only major difference between the circumstances of these two parties is that the children have been living in their present neighborhood for a number of years and are well established in the school and in the neighborhood, except of course the youngest.
"The crux of the problem before the Court is whether the Court should adopt that rule of law which recites that the mother is entitled to the children unless it is shown that she is morally unfit, in which case Mrs. Twilbeck, the mother, would be entitled to have custody of the children under these facts, or whether the Court should follow that line of cases which hold that once custody is established in the father, that custody will not be disrupted unless there is some need for the same. * * * the Court believes that the judgment of custody rendered therein is sufficient to bring this case within the general principles enunciated in the cases of Pepiton v. Pepiton [222 La. 784], 64 So. (2d) 3 (1953) and Decker v.

*919 Landry [227 La. 603], 80 So. (2d) 91 (1955). The Court is of the opinion that custody was granted to the father for good and cogent reasons on the 19th day of February, 1958, and has continued in the father since that time. The children are being well taken care of, and the Court sees no reason why that custody should be disturbed."
LSA-C.C. art. 157 provides that in all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce, unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. Under these provisions the custody of children whose parents have been legally separated or divorced is left largely to the discretion of the trial judge under the circumstances shown to exist when he is called upon to act. However, this discretion is not unlimited but is subject to review and control by this court. Further, the general rule is that the mother's right to the custody of the children, especially when they are of tender age, is paramount to that of the father, and such right should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases where it is to the greatest advantage of the children that their custody is entrusted to the father. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532; Boatner v. Boatner, 235 La. 1, 102 So.2d 472; Decker v. Landry, 227 La. 603, 80 So.2d 91; Cannon v. Cannon, 225 La. 874, 74 So.2d 147; Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311; Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321; Liner v. Liner, 222 La. 789, 64 So.2d 4; Meyer v. Hackler, 219 La. 750, 54 So.2d 7; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456; State ex rel. Morrison v. Morrison, 212 La. 463, 32 So.2d 847; Withrow v. Withrow, 212 La. 427, 31 So.2d 849; Ard v. Ard, 210 La. 869, 28 So.2d 461; Veillon v. Landreneau, 209 La. 1060, 26 So.2d 139; Willis v. Willis, 209 La. 205, 24 So.2d 378; White v. Broussard, 206 La. 25, 18 So.2d 641; Black v. Black, 205 La. 861, 18 So.2d 321; Wilson v. Wilson, 205 La. 196, 17 So. 2d 249; Higginbotham v. Lofton, 183 La. 489, 164 So. 255.
This is not a case where permanent custody was ever at issue or was awarded to either parent. The father's custody, under the ruling in the first case and also in the judgment of custody in the second suit was to be "temporary," and the right of the mother to claim their permanent custody was specially reserved.
The evidence adduced upon the trial of the rule shows that the children at present are happy in the home of their father (who has also remarried). He enjoys a good income. The children regularly attend schools and the church of their faith and are furnished with the necessities of life and are well adjusted in the neighborhood in which they live. Both the father and the stepmother are working, and when their work shifts coincide, the children are looked after by their grandmother.
On the other hand, the mother is also happily married; her husband is gainfully employed and she is the housewife; they own their own home and the husband testified on the trial of the rule that he would gladly receive the three children into his home and take care of them if the court should award custody to their mother.
Thus the father's home is suitable, but so is the mother's, and the children's environment in the latter's home, we believe, would be as good.
Counsel for the father argues that under Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3, and Decker v. Landry, supra, whereas the court has previously placed the children in the care of the father, who has had them for some three years, that it is incumbent upon the mother to show that the children are unhappy or neglected, and also to show it would be more beneficial to their welfare that she have custody rather than the father.
*920 The two cases cited by counsel, and which were relied upon by the trial court, are not apposite from a factual standpoint. In the Pepiton case the parents were divorced because of the mother's adultery, and the father was awarded the child's permanent care and custody. Later the mother filed a proceeding seeking to gain custody of the child. She seems to have evinced no interest in visiting the child and had left Louisiana with the corespondent, and the Court determined that it was to the best interest of the child not to disturb the status quo. In Decker v. Landry the husband obtained a separation from bed and board on the ground of abandonment by his wife and was awarded the custody and control of the two children. Subsequently, the father was granted an absolute divorce. The wife instituted proceedings seeking to obtain the children, alleging in substance that she was well able to provide support for them and that their interests would be better served if their custody was given to her. The evidence showed she was remarried to an employee of the Mutuel System of the Fairgrounds Race Track and proposed that the children live with them in their trailer in which they make their home, part of the year in New Orleans and part of the year in Detroit. Her request for custody of the children was denied.
We do not think that the law contemplates merely because the father, who, under our jurisprudence, should be awarded custody of the children only in exceptional cases, has been given temporary custody because of the wife's then inability to take care of her children solely for economic reasons that it should follow that she should forever be denied the right to have their permanent care and custody unless she is able to make a showing that the children are unhappy and not well taken care of or that their lot would be better with her. Our jurisprudence teems with cases wherein the mother who was forced by reasons of temporary conditions to allow the father to have the children was permitted to reclaim them when she attained the ability of caring for them. It may be true in this case that the children might know their father better because of the three years they have been in his custody, but that circumstance does not constitute a reason for denying their custody to the mother. Unfortunately, until recently, she was in no position to claim them. We are unable to conclude that it would be to the greater advantage of the children to leave them with the father. Young minds respond readily to influences such as love, association and environment, and we cannot believe a change in custody would adversely affect the children's welfare.
Nothing having been shown that the mother is morally, physically, or mentally incapable of rendering the proper maternal care to her three children, we believe that in this contest for permanent custody the right of the mother is paramount and should be recognized.
Therefore, for the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the rule for custody be made absolute and that there be judgment in favor of Mrs. Marie Elaine Broussard, wife of Raymond Twilbeck, and against Malcolm J. Tullier, granting unto her the permanent care, custody and control of the three minor children, Sandra Tullier, Raymond Tullier and Dixie Tullier; however, reserving to the father the right to visit the children at such times as may be determined by the trial court to whom the matter is remanded for such determination.
Costs of the rule, as well as the costs of this appeal, are to be borne by Malcolm J. Tullier.
Reversed and remanded.