NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-867

SHARON WHIDDON SCHULZE

VERSUS

KEVIN LANE SCHULZE

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-3919
HONORABLEGUY ERNEST BRADBERRY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion , Judges.

AFFIRMED

Randy J. Fuerst
Fuerst & Godley
130 W. Kirby Street
Lake Charles, LA 70601
(337) 436-3332
COUNSEL FOR PLAINTIFF APPELLEE:
      Sharon Whiddon Schulze

**William J. Cutrera**
**Attorney at Law**
**910 Ford St.**
**Lake Charles, LA 70602-3273**
**(337) 433-1414**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **Kevin Lane Schulze**

**SAUNDERS, J.**

This appeal of final periodic spousal support arises from the parties' divorce and subsequent child and spousal support determinations. The Defendant-Appellant appeals the judgment of the trial court finding Plaintiff-Appellant free from fault in the breakup of the marriage and the judgment of the trial court awarding Plaintiff-Appellant $2,150.00 for final periodic spousal support. For the reasons discussed, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Sharon and Kevin Schulze married on December 22, 1990 and had two children during the marriage, Megan and Cody, ages 18 and 14 at the time of the trial. During their 19 year marriage, Sharon was a housewife for 14 of those years. Diagnosed with severe rheumatoid arthritis, Sharon was declared permanently disabled by the Social Security Administration and receives monthly benefits. In March 2008, Kevin expressed to Sharon his unhappiness with the marriage and his desire for a divorce. At Sharon's request, the couple attended counseling. However, after Sharon's discovery of Kevin's extramarital affair with his co-worker and the couple's failure to reconcile their differences, Sharon filed for divorce on July 17, 2008.

The parties agreed on an amount of child support pursuant to a Joint Stipulation and Judgment filed on August 20, 2008, whereby Kevin was ordered to pay $2,100.00 per month and to maintain the two children on his medical and dental insurance. Pursuant to the same agreement, Kevin was ordered to pay $2,900.00 per month in interim spousal support. On January 5, 2010, Sharon filed a Rule to Show Why Permanent Spousal Support Should Not Be Granted. The trial court granted a Judgment of Divorce on January 6, 2010, maintaining all previous orders regarding child support and interim spousal support. On June 7,

2010, Sharon filed an Emergency Action to Extend the Interim Spousal Support, which would terminate on July 6, 2010. She also filed for Contempt for Kevin's nonpayment of medical bills.

Before trial, the parties returned to a Hearing Officer, pursuant to their Joint Stipulation, to adjust the amount of child support due to Megan's reaching majority age. The Hearing Officer awarded $1,500.00 to Sharon for her other child, Cody. The trial court issued a judgment on July 1, 2010 which reserved the parties' right to challenge the interim spousal support extension contingent on the court's determination of the issue of final periodic spousal support.

At trial on March 4, 2011, the trial court found Sharon free from fault in the breakup of the marriage and awarded her $2,150.00 per month in final periodic spousal support, to be paid retroactively from July 6, 2010, the date on which interim spousal support terminated. Kevin appeals this judgment, asserting errors as to Sharon's fault in the breakup of the marriage and as to the amount of final periodic spousal support. For the reasons discussed, we affirm the judgment of the trial court.

**ASSIGNMENTS OF ERROR**

1. Whether the Trial Court erred in finding Sharon Schulze free from fault in the breakup of the marriage.

2. Whether the Trial Court erred in awarding $2,150 per month in final periodic support.

3. Whether the Trial Court erred in awarding final periodic support that exceeded one-third of the obligor's net income.

4. Whether the Trial Court erred in making the award of final periodic spousal support retroactive to July 6, 2010.

## LAW AND ANALYSIS

In his first assignment of error, Kevin asserts that the trial court erred by finding Sharon free from fault in the breakup of the marriage. We find no merit in this contention. "It is well settled that a trial court's factual findings regarding fault in the area of domestic relations are given great deference on review. If the trial court's findings are reasonable, i.e. not manifestly erroneous or clearly wrong, then they will not be disturbed." *Terry v. Terry*, 06-1406, p. 4 (La.App. 3 Cir. 3/28/07), 954 So.2d 790, 793 (citing *Coleman v. Coleman*, 541 So.2d 1003 (La.App. 3 Cir. 1989)).

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.

La.Civ. Code art. 111.

> The burden of proof regarding freedom from fault is on the party that is seeking support. Fault, in a permanent support context, is synonymous with conduct that would entitled [sic] a spouse to a separation of divorce under former La.Civ.Code arts. 138 and 139. *Harrington v. Montet*, 93-984 (La.App. 3 Cir. 3/2/94), 634 So.2d 1302.

> Prior to its repeal, former Article 138 provided the grounds for separation of bed and board. Those grounds included the following: (1) adultery, (2) conviction of a felony if sentenced to death or imprisonment at hard labor, (3) habitual intemperance, excesses, cruel treatment or outrages of one of the spouses toward the other, if these intemperances make living together unsupportable, (4) public defamation, (5) an attempt on the other spouse's life, (6) abandonment, (7) one spouse fleeing from justice when charged with a felony that one can prove the fleeing spouse was indeed guilty of committing, (8) intentional non-support of a spouse of the other spouse that is in destitute or necessitous circumstances, (9) when the spouses have lived separate and apart for six months with no reconciliation, and (10) when the spouses have lived separate and apart for six months and one spouse signs an affidavit indicating that the spouses have irreconcilable differences as to render their living together unsupportable and impossible.

> Prior to repeal, former Article 139 provided grounds for immediate divorce. Those grounds included adultery and the other

3

> spouse's conviction of a felony for which sentence given was death or imprisonment at hard labor.
>
> Jurisprudence has broadened fault to include other activity that can be construed as fault for the purpose of denying periodic spousal support. For a spouse to be free from fault, that spouse must not have had any misconduct of a serious nature that is an independent, contributory or proximate cause of the failure of the marriage. *Kendrick v. Kendrick,* 236 La. 34, 106 So.2d 707 (1958).

*Terry*, 954 So.2d at 794.

In the case *sub judice*, a review of the record reveals ample evidence to support the trial court's finding that Sharon is free from fault in the breakup of the marriage. Kevin invites this court to find legal fault in Sharon's financial conduct and in their intimate relationship. First, Kevin argues that Sharon is at fault due to her exorbitant spending habits. He states that more money was spent than what was earned, and that Sharon's spending devastated him due to how much he worked. However, the evidence indicates that Kevin had every opportunity to participate in the couple's financial planning but failed to remedy the conduct for which he blames Sharon. For example, Sharon testified that she offered Kevin the checkbook on two or three occasions, but Kevin refused. Kevin's testimony also points to the fact that he had equal authority over the couple's finances, yet he failed to take remedial actions in response to the family's over-spending. Finally, it is evident from the record that a substantial amount of the family's expenditures involved Megan's rodeo involvement. Kevin could have put an end to his daughter's hobby, but actually encouraged her to continue and did attend some of her rodeo events.

Kevin also argues that Sharon is to blame for the couple's lack of intimate relations, alleging that Sharon rarely had the desire to engage in sexual relations with him. However, both Kevin and Sharon testified that they engaged in intimate relations toward the end of their marriage, which Sharon explains was an effort on

4

her part to salvage the marriage. Kevin testified that he had no intention to reconcile, yet engaged in sexual activity with Sharon anyway. Furthermore, the record does not support the contention that any fault on Sharon's part in the intimate relationship between the parties was an "independent, contributory or proximate cause of the failure of the marriage" that would preclude an award of final periodic spousal support. *Id.*

In light of the evidence, we find that the trial court did not commit manifest error in finding Sharon free from fault in the breakup of the marriage. Accordingly, we affirm this aspect of the underlying judgment.

In his second assignment of error, Kevin contends that the trial court erred by awarding Sharon $2,150.00 per month in final periodic spousal support. We do not find merit in this contention. "Because the trial court is vested with much discretion in determining awards of spousal support, these determinations will not be disturbed absent a clear abuse of discretion." *Noto v. Noto*, 09-1100 p. 6 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1180. Louisiana Civil Code Article 112 governs the calculation of final periodic spousal support:

> A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
>
> B. The court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include:
> (1) The income and means of the parties, including the liquidity of such means.
> (2) The financial obligations of the parties.
> (3) The earning capacity of the parties.
> (4) The effect of custody of children upon a party's earning capacity.
> (5) The time necessary for the claimant to acquire appropriate education, training, or employment.
> (6) The health and age of the parties.
> (7) The duration of the marriage.
> (8) The tax consequences to either or both parties.

C. The sum awarded under this Article shall not exceed one-third of the obligor's net income.

La.Civ.Code art. 112.

In the case at hand, the trial court's judgment states that it based the amount of final period spousal support on the income and expense affidavits of the parties, the income to debt ratios of the parties, and the parties' need and ability to pay. After reviewing the record, we find the amount of $2,150.00 reasonable and do not find it an abuse of discretion.

In his brief, Kevin contends that Cody's expenses were inappropriately included in the calculation of Sharon's expenses. For example, Kevin argues that the trial court incorrectly included expenses for Cody's lunches, extracurricular activities, haircuts, and clothing. Kevin points out that these expenses are already covered by the child support payments he makes each month and should not be considered in the calculation of Sharon's expenses. In her brief, Sharon agrees that the following expenses should be deducted due to the fact that they were improperly included in her total monthly needs: (1) $300.00 from food expenses; (2) $100.00 from telephone bill expenses; (3) $187.00 from medical expenses; (4) $30.00 listed for the child's lunches, yearbook, and pictures; and (5) $50.00 listed for the child's extracurricular activities. These deductions total $667.00.

As the following calculations illustrate, by subtracting the improperly considered expenses from Sharon's total monthly needs, and after applying her net monthly income, we find the award of $2,150.00 to be reasonable. Sharon presented evidence that her total monthly needs are $4,556.00. Subtracting the expenses that Sharon agreed should be deducted, $667.00, results in total monthly needs of $3,889.00. The record indicates that Sharon's net monthly income totals $460.00. Applying her net income to her total needs results in a monthly deficit of

$3,429.00. In comparing this deficit to the trial court's award of $2,150.00, it is clear that the award is reasonable.

Kevin also argues that a number of other expenses were improperly considered in the calculation of final periodic spousal support. For example, Kevin argues that Sharon should not be entitled to $1,250.00 per month for housing allowance, because she lives with relatives who do not charge her rent. Sharon reached this figure by comparing the cost of rent for suitable apartments in her area. It is clear that Sharon cannot expect to live with relatives indefinitely, and the $1,250.00 per month amount is amply supported by the record. Accordingly, we find that the trial court did not abuse its discretion in its award of $2,150.00 in spousal support.

In his third assignment of error, Kevin argues that the trial court erred by awarding final periodic spousal support that exceeds one-third of his net income. Louisiana Civil Code Article 112(C) proscribes that the "sum awarded under this [a]rticle shall not exceed one-third of the obligor's net income." La.Civ.Code art. 112. An examination of the parties' financial documents in the record indicates a disparity in Kevin's alleged yearly and monthly salaries. On his income and expense affidavit, Kevin lists $5,669.75 as his gross monthly income, and $4,377.10 as his net monthly income. In contrast, a pay check stub from June of 2010 shows that Kevin earned $89,269.00 in less than six months, which is nearly $15,000.00 per month. Similarly, the Hearing Officer who presided over the determination of child support in 2010 used a gross monthly income of $15,856.00.

It appears that Kevin's monthly salary is closer to $15,856.00 than to $5,669.75, because the record indicates that he receives per diem stipends from his employer that he failed to include in his total monthly income. On his income and expense affidavit, Kevin lists $5,777.18 as monthly expenses provided by his

employer, but he fails to include this amount in his gross or net monthly income. Moreover, it is evident that Kevin has not habitually spent the entirety of his per diem stipends. Sharon testified that she would transfer $1,600.00 per month when Kevin was away at work, and that this amount was the extent of his expenditures.

An estimation of Kevin's monthly salary from his affidavit, then, with $4,377.10 as his net monthly income and $5,777.18 as per diem expenses provided by his employer, is $10,154.28. The trial court's award to Sharon of $2,150.00 does not exceed one-third of this amount. Although we are aware of the latent inconsistencies in the evidence, we find that the trial court properly used its discretion in arriving at Sharon's award. Accordingly, we affirm the $2,150.00 award to Sharon.

Finally, Kevin argues that the trial court erred in making the award of final periodic spousal support retroactive to July 6, 2010, the date on which the interim spousal support terminated. Louisiana Revised Statute 9:321(B)(2) addresses the retroactivity of judgments concerning spousal support: "If an interim spousal support allowance award is not in effect on the date of the judgment awarding final spousal support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown." La.R.S. 9:321(B)(2).

Kevin argues that Sharon's award should not be retroactive, because Sharon did not actually incur the expenses she provided in her affidavit of income and expenses. Since she lived with relatives at no cost to her, he argues, Kevin should not have to pay for Sharon's expenses during the months in which she lived with her relatives. We reject this argument.

The trial court made the final periodic spousal support award retroactive to the date on which the interim spousal support terminated. We find this to be a reasonable decision, as Sharon was without means or income since July 6, 2010,

and relied on her family for housing and other necessities. Kevin should not be able to use Sharon's dependence on her relatives as a reason to not pay spousal support. Finally, with the retroactive funds, Sharon could not only regain independence, but also repay her family for the expenses they incurred on her behalf.

The governing statute allows the court to make a spousal award retroactive to the date of judicial demand, unless good cause is shown. *Id.* We find that the trial court was within its statutory authority to make the award retroactive to June 6, 2010, rather than the date of judicial demand, since the date of judicial demand for final support was January 5, 2010, a time at which Sharon was receiving interim spousal support. For these reasons we affirm the judgment of the trial court making the final periodic spousal support award retroactive to July 6, 2010.

**CONCLUSION**

We affirm the judgment of the trial court finding Sharon Schulze free from fault in the breakup of the marriage. We also affirm the judgment of the trial court awarding Sharon Schulze $2,150.00 in final periodic spousal support retroactive to July 6, 2010. All costs are assessed to Kevin Schulze.

**AFFIRMED.**